**Khalil I. SEMAAN, Plaintiff,**

v.

**L. Quincy MUMFORD, Librarian of Congress, Defendant.**

**Civ. A. No. 1200–62.**

United States District Court
District of Columbia.

Jan. 25, 1967.

John I. Heise, Jr., Washington, D. C., for plaintiff.

Ellen Lee Park, Asst. U. S. Atty., Washingon, D. C., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIRICA, District Judge.

This is a suit by a former employee of the Library of Congress for restoration to his position on the basis that his removal was invalid. He claims that he was denied the procedural rights of a permanent [1] employee by the manner of his separation. The primary contention of the Librarian of Congress, the defendant, is that the plaintiff was still a probational (conditional) employee when separated and that he did not have the rights claimed.

A motion by the defendant for summary judgment was granted. Plaintiff appealed and the Court of Appeals reversed with an opinion which enunciated a doctrine of estoppel whereby the plaintiff might prevail if certain alleged facts could be proven.[2] According to the Court of Appeals, the elements of this estoppel, if supported by facts, would be that the plaintiff

"was led by the Library to believe he was permanent, that he relied on this course of conduct to his detriment, and that the Library, by refusing to afford him the safeguards of a permanent employee, sought to adopt a position inconsistent with its prior conduct. Since these facts would constitute an estoppel, it was error to deny him the opportunity of proving them." [3]

Upon remand the defendant again moved for summary judgment, supporting the motion by additional exhibits and affidavits. The District Court denied this motion, finding that sufficient facts had been alleged by the plaintiff to constitute an estoppel, if such facts were proven.[4] In making this determination the District Court subjected this second motion for summary judgment, together with the additional exhibits and affidavits, to the guidelines provided by the Court of Appeals. With the law of the case thus developed, this cause was then tried before me without a jury.

It is the opinion of this Court, now that the trial has been concluded, that judgment must be entered in favor of the defendant, the Librarian of Congress, and for two separate reasons. First, this action no longer presents a case, controversy or justiciable issue so as to vest this Court with the requisite jurisdiction. Second, assuming jurisdiction, the plaintiff has failed to establish facts constituting an estoppel against the defendant.

### FINDINGS OF FACT

1. On March 7, 1960, plaintiff was appointed by the Library of Congress to the position of Bibliographical and Reference Librarian, GS-11, in the Near Eastern Section, Orientalia Division of

---

1. "Permanent" is a term which technically has no place in this litigation, however, it has been used interchangeably with "indefinite." The distinctions between the two terms are irrelevant in this case because both types of appointees have the same rights of notice, appeal and hearing upon separation.

2. Semaan v. Mumford, 118 U.S.App.D.C. 282, 335 F.2d 704 (1964).

3. Semaan v. Mumford, supra, 118 U.S.App. D.C. at 284, 335 F.2d at 706.

4. Semaan v. Mumford, Civil Action No. 1200–62, D.D.C. Sept. 21, 1965 (unreported opinion by Judge Spottswood Robinson).

the Reference Department. His appointment was classified as "Indefinite," subject to a satisfactory investigation and to a trial period of one year.

2. This trial period of one year was known as a "probational" period at the time of plaintiff's appointment but pursuant to a regulation promulgated on September 2, 1960, the terminology for this trial period was changed to "conditional." [5] This change in terminology had no effect on plaintiff's status. The new regulation of September 2, 1960, neither converted him to an unconditional indefinite employee nor lengthened the customary qualifying period of one year, now termed a "conditional" period.

3. Although plaintiff's position was an "indefinite" one, the only distinction between such an appointment and a "permanent" position is that the former is expected to last more than one year but not to continue permanently. Both indefinite and permanent employees possess identical rights as they might be involved in this litigation. Both types of employees serve a qualifying period of one year as conditional employees.

4. At the time of his appointment the Library deemed the plaintiff's academic qualifications more than adequate; however, because his personnel records from his previous employment indicated a history of inter-personal difficulties with respect to colleagues, the Library had reservations about plaintiff's personal qualifications. In plaintiff's case, then, the one-year qualifying (conditional) period was more than customary; it was a period during which the Library would determine whether plaintiff could fit himself into the actual working atmosphere of the Library. This the Library officials would do with a view toward his difficulties in previous working relationships.

5. The job description [6] for plaintiff's position provided that his job entailed, *inter alia,* supervising the work of the accessions assistant, general supervision over the Section's collections, recommending book acquisitions, and serving as Head of the Section in the absence of the Section Head.

6. Because this position required special Near Eastern language skills and background, the position was extremely difficult to fill. Consequently, even though there were reservations about appointing the plaintiff, he was selected because Library officials were desperate to fill the post.

7. At all times relevant herein Mr. Robert F. Ogden, as Head of the Near East Section, was plaintiff's immediate supervisor. Dr. Horace I. Poleman, as Chief of the Orientalia Division, was Ogden's supervisor. Dr. Roy P. Basler, as Director of the Reference Department, was Poleman's supervisor. Mr. Ogden did not testify at the trial, having been called by neither side, and Dr. Poleman died before trial, so he did not testify. Dr. Basler testified at length on behalf of the Librarian.

8. Of all the various Library Regulations in evidence in this case the most important is General Order 1728, effective September 2, 1960. In addition to the new terminology which it introduced into personnel activities at the Library, it set forth important procedures and guidelines. Sections 3 through 7 are especially important in this litigation because they deal with personnel actions to be taken at the end of every employee's one-year qualifying period. These sections are incorporated herein by reference.

9. General Order 1728, however, did not have the effect of beginning plaintiff's qualifying period anew. His one-year qualifying period, under normal circumstances, would still end on or about March 7, 1961. Nevertheless, as it will appear from later findings, plaintiff was still a conditional employee when he was separated in September, 1961. Such conditional status in September, 1961, in no way relates to any automatic effect of

---

5. Library of Congress General Order No. 1728, Section 3, Plaintiff's Exhibit No. 13.

6. Plaintiff's Exhibit No. 2.

General Order 1728. In this litigation General Order 1728 merely provides proper terminology and procedures to be followed in personnel matters.[7]

10. According to Section. 4 of General Order 1728, the Personnel Office at the Library, after plaintiff had served at least eleven months as an indefinite-conditional appointee, should have forwarded a notice to this effect either to plaintiff's division chief or department director. The regulation *required* that this be done by stating that the "Personnel Office *shall* notify * * *." (emphasis added). It is clear from the record that this was not done, nor is there anything in the record explaining the failure of the Personnel Office to take this action other than administrative oversight. The regulation goes on to provide that once this action is taken, and within two weeks of this notification, the division chief or department director is to make a specific recommendation concerning the appointee. In the case of an indefinite-conditional appointee such as plaintiff, this recommendation could be conversion to indefinite, extension of the qualifying period, or separation with thirty days notice. As the notice from the Personnel Office was mandatory, so too was a return recommendation. The regulation states that "A specific recommendation indicating one of the following actions *shall* be forwarded * * *." (emphasis added).

11. On October 17, 1960, plaintiff was issued an Official Performance Rating for the period March 7, 1960, through September 30, 1960.[8] He was rated by his Section Head (Mr. Ogden) as "satisfactory" and "fully adequate." The "satisfactory" rating was the second highest of three possible ratings on the form used, the lowest being unsatisfactory and the highest being outstanding. This rating was concurred in by Dr. Poleman, the Chief of the Orientalia Division.

Other than this rating, mid-way during plaintiff's first year, no other performance ratings were ever issued to plaintiff until his separation. The Court attaches no significance to this performance rating because it indicates nothing as to the Library's appraisal of plaintiff at either of the two periods in question; March, 1961, the end of the customary qualifying period, or September, 1961, when he was separated. As to how the plaintiff might have interpreted this performance rating and how such interpretation might support plaintiff's estoppel theory in this case, the next series of findings show its lack of significance.

12. Another important effect of General Order 1728 is that any conversion of an indefinite-conditional appointee to indefinite status requires a written notification to the appointee. There was never any such notification to plaintiff.

13. Plaintiff received a copy of General Order 1728 in September, 1960, and was familiar with its contents, or should have been familiar with its contents at all material times.

14. On or about March 6 or 7, 1961, plaintiff went to the office of Mr. Leon Seidner, Personnel Operations Officer for the Library, to confer about his status. Plaintiff's reasons for going to this office and making inquiries about his status were that he personally was in doubt about whether he had completed his qualifying period, whether his personnel file reflected anything adverse which might militate against his conversion to indefinite, or whether he had in fact already been converted to indefinite.

15. Mr. Seidner reassured plaintiff; however, this assurance was only partial. I find that plaintiff was assured that there was nothing adverse in his file insofar as discrediting memoranda or adverse performance ratings are concerned, but I also find that Mr. Seidner gave no assurance that plaintiff had been

---

7. Although during pre-trial motions the defendant contended that this Order had the effect of initiating a new one-year qualifying period for plaintiff, this contention was not made at trial or in the post-trial proposed findings of fact, proposed conclusions of law and legal memorandum submitted by defendant.

8. Plaintiff's Exhibit No. 4.

converted to indefinite ("permanent") status. I accept as a fact Mr. Seidner's version of this conference and reject plaintiff's version insofar as it conflicts with Mr. Seidner's.

16. Plaintiff contends that after early March, 1961, a number of events occurred which show that the Library considered plaintiff to be converted to indefinite status, even though the requirement of a written recommendation to this effect under General Order No. 1728, had not taken place. Plaintiff points to the following factors which, he claims, show that he was being treated differently than he was during his first year:

A. He was allowed to travel to scholarly and professional conferences as an official representative of the Library;

B. He was allowed to recommend Library acquisitions without supervision;

C. He was given unearned annual leave;

D. He was allowed to participate in policy conferences;

E. He was given personnel duties such as supervising other Library personnel, reviewing their work, and serving as Section Head in the Head's absence;

F. He was given supervision over Near East collections.

Plaintiff then argues that these differences in treatment not only indicate that he had been converted informally, but that even if he had not been converted, formally or informally, he had a right to rely on these differences in treatment after March, 1961, to act as though he had been converted. I find that plaintiff was treated differently after March, 1961, than he was treated before then. I disagree, however, with any contention that this difference in treatment occurred suddenly in March, 1961. I find that these differences in treatment occurred gradually throughout plaintiff's eighteen months with the Library, with most occurring well in advance of March, 1961, during the undisputed qualifying period.

17. I also find that the performance of all these duties, and the bestowal of all the privileges which plaintiff points to, have no relationship to whether an appointee is serving a qualifying period or whether his status has been converted to unconditional. I agree with Dr. Basler's testimony that the bestowal of these privileges and permission to do these things depended entirely upon whether an appointee, in his supervisors' estimation, was able to handle the tasks assigned. When bestowing such privileges or requesting such performances, plaintiff's supervisors gave no thought to whether he was conditional or unconditional, and no implications about status were intended. I also find that plaintiff knew this. Plaintiff was not justified in drawing any inferences about his technical status from any actual or supposed changes in his treatment by Library officials. Simply stated, no one at the Library—including plaintiff—ever considered this gradual assumption of privileges and responsibilities as bestowing any of the procedural rights of an unconditional employee, the ultimate claim of the plaintiff in this litigation.

18. I find that there is no custom or practice at the Library, nor was there in 1960 and 1961, denying conditional (probational) employees the privileges or responsibilities referred to above. Plaintiff offered no credible evidence of such custom or practice whereas Dr. Basler testified to the absence of such custom or practice. Dr. Basler stated that the bestowal of such privileges and assumption of responsibilities had no relationship to an appointee's technical status.

19. On September 12, 1961, plaintiff wrote a memorandum opposing a trip to Cairo by four employees of the Library for the reason that he believed such a trip was wasteful and could not be a success. He submitted this memorandum to Dr. Basler and on September 14, 1961, plaintiff was called to Dr. Basler's office to discuss the memorandum which, in Basler's view, implied criticism of the Reference Department. At this conference plaintiff was requested by Basler

to either withdraw the memorandum, resign, or be separated. Plaintiff refused to either withdraw the memorandum or resign; rather, on September 21, 1961, he delivered the memorandum to the office of the Librarian of Congress.

20. Early on the morning of September 22, 1961, plaintiff took several pictures in the Near East Section which he claims were for the purposes of supporting his position on the Cairo trip. After being questioned in Dr. Basler's office about the picture taking, he was removed from the Library. His removal was followed, on the same day, by notification of his separation. This notification was based on a personnel form memorandum, pursuant to Section 4 of General Order No. 1728, containing the recommendation that plaintiff be separated during his qualifying period. According to the personnel form, plaintiff's qualifying period was listed as completed on September 7, 1961. Thus, the separation of plaintiff was accomplished two weeks after the end of his qualifying period, as General Order No. 1728 required.

21. After his separation, plaintiff attempted to invoke the procedural rights of a permanent (unconditional) employee by requesting a hearing. This was denied on the basis that he was separated during his qualifying period under General Order No. 1728 and thus had no right to contest his separation. Failing all other administrative remedies, plaintiff filed this action seeking reinstatement.

22. Plaintiff no longer seeks reinstatement. During plaintiff's testimony the Court asked him whether he would "go back to work over there under any circumstances." Plaintiff replied: "Indeed, under no circumstances I would go to work at the Library of Congress, absolutely not." [9] Further, neither plaintiff nor his counsel has suggested any method whereby plaintiff can claim any rights, emoluments or privileges without actually going back to work at the Library. In the absence of any indication to the contrary, I find that even if the Court should determine that plaintiff was invalidly separated and entitled to reinstatement, it would be merely an advisory opinion due to plaintiff's professed unwillingness and lack of desire to go back to work at the Library, "under any circumstances." It is clear that he cannot invoke any procedural rights, such as to request a hearing, without actually reassuming his post. As an outsider he cannot request these procedures.

## CONCLUSIONS OF LAW

1. Plaintiff, having abandoned his request for reinstatement to his previous appointment at the Library of Congress, does not have before the Court any request which can be granted, regardless of the facts. Any determination that plaintiff was invalidly separated from his appointment would be an advisory opinion, forbidden by the Constitution and laws of the United States. Accordingly, the Court is without jurisdiction.

2. Plaintiff has not established facts constituting an estoppel against the defendant. The estoppel contended for by the plaintiff, that by Library actions and representations plaintiff was led to believe, to his detriment, that he had become an unconditional-indefinite employee, has not been established. Plaintiff has failed to establish actions or representations by Library officials inconsistent with conditional status. Further, plaintiff has not shown that he did rely or that it would have been reasonable for him to rely upon any actions or representations. Under all of the facts and circumstances, plaintiff knew, or should have known, that any actions or representations implied nothing about his technical status as conditional or unconditional.

3. Plaintiff was properly separated from the Library of Congress in accordance with all relevant laws and orders of the Library of Congress.

4. Defendant is entitled to judgment dismissing the action with costs being awarded to neither side.

9. Tr. 103.