**PANCOASTAL PETROLEUM, LIMITED,**
Appellant,

v.

Stewart **UDALL**, Secretary of Interior,
et al., Appellees.

No. 19118.

United States Court of Appeals
District of Columbia Circuit.

Argued May 7, 1965.

Decided July 6, 1965.

Mr. E. Tillman Stirling, Washington, D. C., with whom Mr. John E. Boice, Jr., Washington, D. C., was on the brief, for appellant.

Mr. Walter H. Fleischer, Attorney, Department of Justice, with whom Asst. Atty. Gen. John W. Douglas, Messrs. David C. Acheson, U. S. Atty., and Alan S. Rosenthal, Attorney, Department of Justice, were on the brief, for appellees. Mr. Morton Hollander, Attorney, Department of Justice, also entered an appearance for appellees.

Before WASHINGTON, DANAHER and LEVENTHAL, Circuit Judges.

PER CURIAM.

We affirm the ruling of the District Court granting summary judgment for defendant, and dismissing a complaint brought on the theory that the Oil Im-

port Appeals Board erred as a matter of law in summarily denying the petition filed by appellant for a grant of an allocation to import crude oil.

The background of the oil import program and regulations, which we have discussed elsewhere [1] may be summarized as follows:

Beginning in 1949, domestic oil began to be supplanted in United States markets by foreign oil that was unusually cheap, due to extraordinarily large reservoirs and the low labor and other costs both in foreign lands and on the foreign flag tankers, as contrasted with costs of domestic producers and the American flag tankers moving from Gulf Coast ports to East Coast markets. Limitation of petroleum imports was recommended by a special cabinet committee appointed in 1954; inaugurated in 1957 on a voluntary basis with quotas for qualified importers; and instituted on a mandatory basis by Presidential Proclamation No. 3279 of March 10, 1959,[2] as amended.

The Proclamation fixed the level of petroleum imports and limited quotas to persons with refinery capacity, based primarily on refinery inputs, with limited and declining continuation of the voluntary quotas that reflected importing history.

Section 4(a) of the Proclamation authorized the Secretary of the Interior to establish an interdepartmental Appeals Board to consider petitions by persons affected by the regulations. Section 4(b) provided that the Appeals Board may be empowered "(2) [T]o grant allocations of crude oil and unfinished oils in special circumstances to persons with importing histories who do not qualify for allocations under such regulations." Oil Import Regulation 1 was issued March 13, 1959, by the Secretary of the Interior as an implementing regulation. (24 F.R. 1907) It established the Oil Import Appeals Board and contained a provision, Section 21(b) (27), authorizing this Board to grant import allocations to persons affected by the regulations, virtually identical with Section 4(b) (2) of the Proclamation.

Appellant, having no refinery, petitioned on the basis of the following alleged "importing history": In 1944 Atlantic Refining Company entered into an agreement with a company we shall refer to as appellant (strictly, appellant's predecessor in interest) to drill oil wells on concessions in Venezuela owned by appellant, with each company paying half the operating costs. Atlantic became the owner of one-half of the oil produced, but under the agreement it was also required to purchase whatever portion of appellant's share of the oil produced the latter did not choose to take. In practice all the oil was purchased by Atlantic, title passing at the wellhead in Venezuela, and Atlantic transported both its own oil and the share purchased from appellant to its refinery in Philadelphia.

In its 1963 opinion denying appellant's petition the Board followed an earlier decision it had rendered in another case and held: The express definition of "importing" in Section 22 of the regulation [3] makes it clear that only the person by or for whose account a domestic entry for consumption is made can have an "importing" history. Even apart from the definition the completion of a sale of oil in Venezuela can not be equated with the domestic import of such oil.

Appellant says the Board's application of the regulation is excessively narrow and mechanical, that appellant was the effective cause of the import made by Atlantic (by declining to take the oil), appellant's realization depending on the Philadelphia market price, less cost of transport there, and that hence appellant was "effectively importing" the

1. Atlantic Refining Co. v. Standard Oil Co., 113 U.S.App.D.C. 20, 304 F.2d 387 (1962).

2. The proclamation, with amendments, appears as a note to 19 U.S.C. § 1862.

3. "As used in this regulation * * * (h) the words 'importation,' 'importing,' 'import,' 'imports,' and 'imported' include both entry for consumption and withdrawal from warehouse for consumption."

oil to the Philadelphia refinery. Appellant glosses over the fact that fluctuations in market price while the oil was in transit to the United States was solely for the account of Atlantic. Even assuming that appellant's argument rises to the level of being a possible application of the regulation, it falls far short of meeting the burden facing one who seeks to overturn the interpretation and administrative application accorded by an administrative agency, that the interpretation is not reasonable and the application lacks rational foundation.[4]

▮ Indeed appellant has an even greater burden than customarily faces litigants since there is nothing about "importing history" in the underlying enactment, which might provide a predicate for an argument based on Congressional intent. The law confers discretion on the President in broadest terms. It provides that upon a determination that an article being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security, the President "shall take such action, and for such time, as he deems necessary to adjust the imports of such article and its derivatives so that such imports will not so threaten to impair the national security." (19 U.S.C. § 1862.) Generally "importing history" was downgraded by the Proclamation as the basis for a quota, in contrast with other approaches deemed in furtherance of current national interest, such as the basic allocation to refiners on the basis of

refinery input. The administrative interpretation here challenged is supported by the general presumption of validity and in particular by the fact that the regulation is being interpreted and applied by a board which is an affiliate of, if not identical with, the officer who fashioned the wording. Bowles v. Seminole Rock Co., 325 U.S. 410, 413–414, 417, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945), Udall v. Talman, 380 U.S. 1, 16–17, 85 S. Ct. 792, 13 L.Ed.2d 616 (1965). Among the factors supporting the administrative application here is the certainty and clarity of administration provided by the ruling assailed as mechanical.

The Board was not required to inquire into appellant's particular transactions but any such inquiry does not advance appellant's cause. The Board spoke in terms of substance and not mere form when it ruled that appellant's essential position was that of a foreign producer.

The clause invoked by appellant was the kind of saving clause that an administrative agency may devise not so much to take care of a known problem area as to safeguard against the possibility that there may arise a special meritorious situation not clearly visualized.

The fact that the term "importing" may have broader definitions in other contexts[5] certainly does not preclude a narrow definition in the setting of the oil import program. See Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372 (1918).

Affirmed.

---

4. Securities & Exchange Commission v. Chenery Corp., 332 U.S. 194, 207, 67 S. Ct. 1575, 91 L.Ed. 1995 (1947).

5. Appellant relies on Hooven & Allison Co. v. Evatt, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252 (1945). That case involved an entirely different context—immunity from State taxation. That case involved an American purchaser of goods, who was acquiring title and dictating the movement into the United States. Pancoastal is the foreign producer, relinquishing title, without authority to require that movement into the United States.