Alexander T. DEUTSCH, Petitioner,

v.

**UNITED STATES ATOMIC ENERGY COMMISSION and United States of America, Respondents.**

No. 21098.

United States Court of Appeals District of Columbia Circuit.

Argued June 19, 1968.

Decided Aug. 26, 1968.

18. Lorain Journal Co. v. FCC, *supra* note 14.

Messrs. H. Thomas Sisk and Sol B. Wiczer, Washington, D. C., with whom Mr. M. Michael Cramer, Washington, D. C., was on the brief for petitioner.

Mr. Michael C. Farrar, Attorney, Department of Justice, with whom Asst.

Atty. Gen., Edwin L. Weisl, Jr. and Mr. John C. Eldridge, Attorney, Department of Justice, were on the brief, for respondents. Mr. William Kanter, Attorney, Department of Justice, also entered an appearance for respondents.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and TAMM, Circuit Judge.

PER CURIAM:

Petitioner, Alexander T. Deutsch, seeks review of a final decision of the respondent Atomic Energy Commission rejecting his claim for an award under § 157 of the Atomic Energy Act of 1954, 42 U.S.C. § 2187.[1] Basically petitioner claims that a discovery of his has led to the utilization of atomic energy to preserve and sterilize food.

On August 27, 1949, petitioner filed a patent application, number 112833, with the United States Patent Office and requested the issuance of a patent for "Radioactive Products." In substance the application covered a method to provide food with an amount of radioactivity strong enough to have "healing consequences," but not strong enough to damage the human body through a processing designed for "the gradual incorporation of * * * isotopes into the product * * *." After full consideration the Patent Office issued a final rejection in 1951 of all the claims in the application and petitioner, who acted pro se in the Patent proceeding, abandoned the application. The Patent Office concluded that petitioner's claims were "indefinite, vague and lacking invention," over prior patents and prior art, since the prior art recorded "the treatment of various substances with the emanations from radium and radioactive substances." Some fourteen years later, in 1965, peti-

[1] 42 U.S.C. § 2187(b) (3) (1964). Any person making any invention or discovery useful in the production or utilization of special nuclear material or atomic energy, who is not entitled to compensation or a royalty therefor under this chapter and who has complied with the provisions of section 2181(c) of this title may make application to the Commission for, and the Commission may grant, an award. The Commission may also, upon the recommendation of the General Advisory Committee, and with the approval of the President, grant an award for any especially meritorious contribution to the development, use, or control of atomic energy.

tioner filed an application for an award with the Patent Compensation Board of the Atomic Energy Commission, seeking recovery under Section 157(b) (3) of the Atomic Energy Act of 1954, 42 U.S.C. § 2187(b) (3) (1964) which provides, *inter alia*, that "any person making an invention or discovery useful in the utilization of special nuclear material or atomic energy * * * may make application to the Commission for, and the Commission may grant, an award. * * * " An earlier Act of 1946, under Section 11(d) is also cited by petitioner in support of his claim.

The basis of petitioner's claim was his belief that the disclosures in his 1949 patent application led to the successful developments in the field of food sterilization and preservation through exposure of food to radiation.[2] Petitioner argues that since the Commission was formally advised by the Patent Office of the contents of this patent application (which fact is confirmed in the Patent Compensation Board's ruling) and since the Commission thereafter became interested in the preservation of food through the use of radioactive isotope irradiation, he is legally entitled to compensation because his patent application was the initial source of first treatment of the subject as it is today practiced.

The Patent Compensation Board conducted an evidentiary hearing and thereafter rendered an opinion in which it determined that petitioner was not entitled to an award. The Board's ruling was first based upon a finding that petitioner's patent application was "recommending the use of naturally radioactive materials" and that if petitioner advocated the use of only such substance he was in fact and law not eligible for any award because he had not "dealt with, in his work, special nuclear material or atomic

energy within the import of the Atomic Energy Acts." The Board, however, pursued its inquiry further, studying petitioner's patent claims and their relationship to the knowledge in this field as of the time of the patent application's disclosure. It was the Board's conclusion that at the time of petitioner's disclosure the Atomic Energy Commission already had the knowledge disclosed by his patent application and referred specifically to information in the Commission's possession as a result of the patent application of Lyle B. Borst (S.N. 552,556) which antedated "by several years" the Deutsch patent application. The Borst application recited a proposed process of food preservation which comprised the adding of minute amounts of short-lived fission products to the material being treated with retention of the material until the fission products were harmless. The Patent Office had ruled that the Borst proposal was not a patentable one. The Patent Compensation Board in its decision also enumerated the prior patents cited by the Patent Office in its 1954 action rejecting petitioner's patent claims over prior patents and we note that those patents covered a span of almost fifty years antedating that of our petitioner.[3]

The Patent Board's opinion of January 10, 1967, analyzed petitioner's claimed invention in substantial detail, reviewed the governing statutes, and outlined the testimony of petitioner at the hearing conducted by the Board. It appraised the testimony of respondent's expert witness, reached a determination that petitioner was not entitled to an award and set forth a statement of its reasons for so concluding which encompasses some ten pages of the opinion.

Petitioner thereafter formally requested the Commission to review the Compensation Board's decision and by order

2. Petitioner relied upon correspondence he alleges he engaged in with the Atomic Energy Commission, but we are assured by the Commission that a detailed search of its records failed to disclose any such correspondence.

3. The patents cited included, *inter alia*, Hewitt No. 1022851, April 9, 1912; Lieber No. 788480, April 25, 1905, and Nesmith, No. 851306, April 23, 1907.

dated May 29, 1967, the Commission denied that request.[4]

## II

■ We are urged to overrule the Commission's holding that petitioner is not entitled to an award upon the ground that this conclusion is arbitrary and capricious and lacks substantial evidence in the record supporting or justifying this ruling. We were told, moreover, on oral argument that the factual basis for the Commission's holding is clearly and completely erroneous as a matter of scientific knowledge and phenomenon. The briefs and supporting documents filed by both parties are extensively devoted to presentation and argument as to the correctness, or the falsity of scientific principles related to radioactive material and products, atomic energy, irradiation, the nucleus of the atom and the action and reaction of its protons and neutrons. We are therefore confronted at the very threshold of this case with the ever-recurring question of the scope and extent of our authority to set aside the ruling of an administrative agency. Despite our daily diet of challenges to administrative agency action and our resulting repeated efforts to articulate the limits of judicial review of such actions we nevertheless are continually called upon to substitute our judgment on factual issues for that of the agency charged by Congress with the initial responsibility of making, evaluating, and acting upon those facts. It is well settled that the fact-finding function is within the exclusive province of the administrative agen-

cy.[5] We appear unable to establish a substantial recognition at the Bar that "[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Rochester Telephone Corp. v. United States, 307 U.S. 125, at 146, 59 S.Ct. 754, at 765, 83 L.Ed. 1147 (1939).

■ The basis of petitioner's argument is, however, almost exclusively factual in nature, since the thrust of this appeal is that the Commission must be reversed because it patently misconstrued the facts. In asking this Court to reverse the Commission's decision petitioner urges that this agency's action was arbitrary and capricious. The burden petitioner has assumed in this case is by no means a light one. Petitioner has not met this burden and he has failed to show that the Compensation Board's construction of the facts was either arbitrary and capricious or that it was not supported by substantial evidence. That the facts in a case are possibly susceptible to two different interpretations does not render the agency decision unsupported by substantial evidence. A purview of the entire record in this case reveals that the decision is indeed grounded in logic and reason, supported by generally accepted scientific principles, and buttressed by a careful analysis of all the facts and factors involved.

■ In a case such as this where both petitioner's and respondent's briefs are devoted almost exclusively to arguments concerning varying constructions

4. Under 10 C.F.R. § 80.61(e) (1968) the decision of the Board became the final action of the Commission.

5. Consolo v. FMC, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); FCC v. Schreiber, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965); Swayne & Hoyt v. United States, 300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659 (1937); Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343 (1935); Palmer v. CIR, 302 U.S. 63, 58 S.Ct. 67, 82 L.Ed. 50 (1937); NLRB v. Waterman S. S. Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704 (1940); United States v. Carlo Bianchi & Co., 373 U.S. 709, 83 S.Ct. 1409, 10

L.Ed.2d 652 (1963); SEC v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); Duesing v. Udall, 121 U.S.App.D.C. 370, 350 F.2d 748, cert. denied 383 U.S. 912, 86 S.Ct. 888, 15 L.Ed.2d 667 (1965); North Central Airlines, Inc. v. CAB, 105 U.S.App.D.C. 207, 265 F.2d 581, cert. denied 360 U.S. 903, 79 S.Ct. 1285, 3 L.Ed.2d 1254 (1963); Pancoastal Petroleum, Ltd. v. Udall, 121 U.S.App.D.C. 193, 348 F.2d 805 (1965); American Federation of Musicians v. FCC, 123 U.S.App.D.C. 74, 356 F.2d 827 (1966); American Trucking Ass'ns., Inc. v. FCC, 126 U.S.App. D.C. 236, 377 F.2d 121 (1966).

of the facts, considerable deference must be given to the expertise of the administrative agency in this field. The mandate from Congress is clear that within a specified and carefully delineated area, *id est*, the determination and examination of the technical factors upon which an applicant is or is not entitled to compensation, the Patent Compensation Board and the Atomic Energy Commission are to utilize and employ the skill and knowledge which they possess in this area. See 42 U.S.C. § 2187(c) (1), (2) (1964). The petitioner was afforded a full evidentiary hearing at which witnesses for both sides were permitted to testify. All witnesses were, of course, subjected to the "crucible of cross-examination."

We find therefore that the decision of the Patent Compensation Board as affirmed by the Atomic Energy Commission is not arbitrary and capricious; that it is supported by substantial evidence in the record below; and that its evaluation and interpretation of all the facts and factors involved must prevail.

Affirmed.