Mary WEST et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE et al., Defendants.

No. DC 699–S.

United States District Court
N. D. Mississippi,
Delta Division.
Nov. 17, 1969.

———◆———

Michael B. Trister, Oxford, Miss., Ronald F. Pollack, New York City, for plaintiffs.

Norman L. Gillespie, Asst. U. S. Atty., Oxford, Miss., Howard Pickard, Dept. of Agriculture, Washington, D. C., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

The Complaint, seeking injunctive and declaratory relief in the aforesaid cause, was filed on March 3, 1969. On June 5, 1969, a Motion For Preliminary Injunction was filed, and a hearing was held on the Motion on June 20, 1969, in the United States District Court, Aberdeen, Mississippi. The Court entered an opinion and order denying the Motion For Preliminary Injunction on June 25, 1969.

On June 17, 1966, a Motion To Dismiss Or In The Alternative For Summary Judgment was filed by the defendants. On June 24, 1969, the parties entered into a stipulation that the Court might consider the Motion without noticing a hearing for oral argument. Nevertheless, the Court noticed the Motion For Hearing on October 22, 1969, and gave the parties an opportunity to request oral argument. Neither side requested oral argument, and the Motion is now before the Court for decision.

At the hearing on the preliminary injunction both counsel for the plaintiffs and counsel for the defendants presented evidence to the Court, as shown by the record and the Reporter's notes. An affidavit is attached to the defendants' Motion To Dismiss Or In The Alternative For Summary Judgment, and a stipulation was entered into by the parties on June 17, 1969, and filed with the Court on June 20, 1969. The aforementioned testimony, acts and evidence plus the Complaint and Answer constitute the record for the Court's consideration of the Motion To Dismiss Or In The Alternative For Summary Judgment.

The nature of the cause has already been set forth by the Court in the Opinion on the Motion For Preliminary Injunction. The Court does not intend to rehash this ground but intends rather to go directly to the consideration of the Motion For Summary Judgment.

The issue before the Court is whether or not the Department of Agriculture has acted arbitrarily, capriciously, or in an abuse of discretion, or otherwise not in accordance with law [1] in implementing that part of the Food Stamp Act which provides that "households shall be charged such portion of the face value of the coupon allotment issued to them as is determined to be equivalent to their normal expenditures for food."[2]

The Secretary of Agriculture is authorized by Congress to formulate and administer the food stamp program:

"The Secretary is authorized to formulate and administer a food stamp program under which, at the request of an appropriate State agency, eligible households within the State shall be provided with an opportunity more

---

1. 5 U.S.C.A. § 706(2) (A).

2. 7 U.S.C.A. § 2016(b).

nearly to obtain a nutritionally adequate diet through the issuance to them of a coupon allotment which shall have a greater monetary value than their normal expenditures for food." 7 U.S.C.A. § 2013(a)

The language of the Act is important to the Court, for it is difficult to discern the true course to follow in the elusive field of judicial review of administrative discretion. The Act states that the "Secretary is *authorized* to formulate and administer" and further that "eligible households within the state shall be provided with an *opportunity* more nearly to obtain a nutritionally adequate diet * * *."

■ That portion of the Act, the implementation of which is challenged, states that "households shall be charged such portion of the face value of the coupon allotment issued to them as is *determined* to be the equivalent to their normal expenditures of food". Thus the Court feels that the case sub judice represents a direct attack on the discretion or judgment used by the Secretary of Agriculture in implementing the Act. The Court is cognizant of the fact that there is some discretion in almost all action, and that the mere fact that a statute vests discretion does not preclude judicial review. Overseas Media Corp. v. McNamara, 128 U.S.App.D.C. 48, 385 F.2d 308.

■■ However, the doctrine of separation of powers recognizes due deference to the implementation or ruling of an administrative or executive agency when the legal question is one involving the meaning or interpretation of a statute continually applied and interpreted by the Executive Branch. It is not the province of the Courts to harass or clog the wheels of the executive process in areas peculiarly within the channel of executive action. Bamberger v. Clark, 129 U.S.App.D.C. 70, 390 F.2d 485, 1968. A mere difference of judgment over the merits of a particular administrative action, as a means of achieving a legislative objective, when Congress has assigned authority to make and act upon such determination to the agency, is not judicially reviewable. Kendler v. Wirtz, 388 F.2d 381, 3 Cir. 1968.

The limited scope of judicial review in such cases has been recognized by the Supreme Court in Panama Canal Company v. Grace Line, 356 U.S. 309, 78 S. Ct. 752, 2 L.Ed.2d 788, 1958. In the *Panama Canal* case the parties asked the Court to compel the company to fix new tolls for the canal. The Court stated at 356 U.S. 318, 78 S.Ct. 757:

"We put the matter that way since the relief sought in this action is to compel petitioner to fix new tolls. The principle at stake is no different than if mandamus were sought—a remedy long restricted, Marbury v. Madison (US), 1 Cranch. 137, 166, 2 L.Ed. 60, 70; Decatur v. Paulding (US), 14 Pet. 497, 514–517, 10 L.Ed. 559, 567–569, in the main, to situations where ministerial duties of a nondiscretionary nature are involved. Where the matter is peradventure clear where the agency is clearly derelict in failing to act, where the inaction or action turns on a mistake of law, then judicial relief is often available. Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503, is a recent example. There the Secretary of the Army issued less than 'honorable' discharges to soldiers, based on their activities prior to induction. The Court held that the 'records,' prescribed by Congress as the basis for his action, were only records of military service. But where the duty to act turns on matters of doubtful or highly debatable inference from large or loose statutory terms, the very construction of the statute is a distinct and profound exercise of discretion."

In the present case the determination of the equivalent to a household's normal expenditure of food is necessarily based on executive discretion and implementation. It takes no great exercise of the imagination to realize the difficulty in-

volved in placing such an act into operation in all 50 states.

Attached to the Motion To Dismiss And In The Alternative For Summary Judgment is an affidavit of Mr. Winn F. Finner, the Acting Administrator of the Consumer and Marketing Service, United States Department of Agriculture. In that capacity Mr. Finner has responsibility for the food assistance programs of the Department of Agriculture. In the affidavit Mr. Finner explains that the determination of the normal expenditure of food for the food stamp program is based on two factors: (1) Size of household, (2) The income of household. The initial determinations were made from nationwide and regional statistical studies made in 1955, and have been subsequently revised during the periods 1961–64, subsequent to 1964, and recent changes which became effective February 1, 1969. He further states that studies are now under way to determine the effect on participation in the program of the recent reductions in coupon purchase requirements.

Mr. Finner explains that normal food expenditures cannot be determined on an individual basis simply by deducting all non-food expenses of the household leaving only a balance to be allocated to food, for this approach resorts in the distortion of the program from one of providing food assistance to a system of income supplements under which non-food expenses increase and actual food consumption decreases. This is directly relevant to much of the testimony placed in the record by the plaintiffs in that the plaintiffs attempted to show that after all non-food expenses, there was not enough money left for food stamps.

Finally, Mr. Finner states that the entire food stamp program is now under review by the Executive and Legislative branches of the Government, and that Congress has under consideration a number of bills relating to the food stamp program. One of the bills was introduced into evidence by the defendants. (Defendants' Exhibit No. 6, Senate Bill No. 2370, introduced June 12, 1969) which bill would prevent the amount charged for any coupons from exceeding 30% of a household's income, and would provide that coupon allotments might be issued without charge to households with little or no income or other financial resources.

The food stamp program, as applied in Mississippi, contains a hardship provision under which a household may be granted an adjustment in the determination of the cash amount to be paid for its coupon allotment. The adjustment must be approved by the County Welfare Agent or the Casework Supervisor, and is made on the basis of verification of the nature of the hardship, and must be reviewed periodically to determine whether the need continues for the adjustment, Mississippi Plan of Operation, Paragraph 6(b), Page 11.

The plaintiffs have attempted to show that there was a reduction in the number of households receiving support when a county in Mississippi switched from the commodity distribution program to the food stamp program. Further that there has been a decrease in the number of families using the food stamp program in those counties which have continually used food stamps. The plaintiffs would have the Court issue an injunction restraining the defendants from charging food stamp prices which are in excess of the plaintiffs' normal expenditures for food. Whether this is to be achieved on an individual basis or by lowering the price of food stamps to all persons is not clear.

The plaintiffs introduced in evidence the affidavit of a Mr. Ellis B. Levin, who is the Legislative Assistant to Congressman Leonard Farbstein of the State of New York, (Plaintiffs' Exhibit No. 5). In the affidavit Mr. Levin states that he had discussions with high level officials of the Consumer and Marketing Service of the Department of Agriculture as to the expenditure of the appropriation of food stamps during fiscal year 1969. The substance of the affidavit is that there will be a large

amount of the appropriation turned back to the Treasury Department and that more counties or areas of the United States could apply for relief under the Act.

The plaintiffs presented testimony from a Mr. Rodney Leonard, who until February 1, 1969, was an Administrator in the Consumer Marketing Division of the Department of Agriculture. Mr. Leonard testified that he felt that people had overstated their expenditures for food in the statistical studies which had been taken. He testified that food prices vary from area to area, season to season, and that the schedules of the Department of Agriculture are not flexible enough to encompass the variations. He testified that the food consumption survey was based on $1,000.00 increments and that the increments should have been smaller, and that the estimates of the people in the survey were based on a seven day recall. Mr. Leonard recognized the tremendous administrative burden in implementing such a program. Finally he stated that the main problem with the food stamp program was funding, and that the Department of Agriculture had recently submitted a bill to Congress which asked for a much larger appropriation than that of the preceding fiscal year.

By now it should be evident to all that the case sub judice has an aura of the Legislative and Executive, that is not suited for judicial disposition. It is not for the Courts to say that the size of household and income of household are not valid factors on which to base a schedule for the normal expenditures of food. Certainly the changes made in the program evidence a good faith attempt to improve the program and in the eyes of the Court to abide by the Act. The choice between factors or studies pertinent to an administrative decision are choices which the administrative authorities are more competent to make than are the courts, and which the courts should not interfere, McCarey v. McNamara, 390 F.2d 601, 3 Cir. 1968.

The Court is satisfied that in this case the action of the Department of Agriculture is not arbitrary or capricious, nor is it an abuse of discretion, nor is it contra to law, therefore an order will be entered granting the Motion for Summary Judgment.