**Miriam RODWAY et al., Appellants,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE et al., Appellees.**

**No. 72–1906.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 6, 1973.

Decided July 10, 1973.

Ronald F. Pollack, New York City, with whom Roger A. Schwartz, New York City, and John R. Kramer, Washington, D.C., were on the brief, for appellants.

David G. Larimer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Robert M. Werdig, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before TAMM and WILKEY, Circuit Judges, and JAMESON,* Senior United States District Judge for the District of Montana.

JAMESON, District Judge:

Plaintiffs-appellants, members of nine low-income households, on behalf of themselves and others similarly situated, together with the City of New York, Commonwealth of Pennsylvania, and the National Welfare Rights Organization and its affiliates brought this action for

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

declaratory and injunctive relief against the United States Department of Agriculture (USDA), the Secretary of Agriculture and other officials of the Department, for failure to comply with directives of the Food Stamp Act (7 U.S.C. §§ 2011, 2013(a) and 2016(a)) in refusing to establish coupon allotment levels that reflect "the cost of a nutritionally adequate diet". The district court granted defendants' motion for summary judgment, holding that the "issues raised in plaintiffs' complaint are now moot" and that there "are now no material facts in dispute."

Appellants seek a reversal of the order of the district court and a remand with instructions to enter summary judgment in their favor. Appellees contend that the district court properly dismissed the action as moot and that apart from the issue of mootness the summary judgment in their favor should be affirmed.

### Food Stamp Act

The Food Stamp Program was established by the Food Stamp Act (7 U.S.C. §§ 2011–2025), enacted in 1964[1] and amended in 1971.[2] As amended, Section 2013(a) reads:

"The Secretary is authorized to formulate and administer a food stamp program under which, at the request of the State agency, eligible households * * * shall be provided with an opportunity to obtain a nutritionally adequate diet[3] through the issuance to them of a coupon allotment which shall have a greater monetary value than the charge to be paid for

such allotment by eligible households. The coupons * * * shall be used only to purchase food from retail food stores which have been approved for participation in the food stamp program. Coupons * * * shall be redeemable at face value by the Secretary through the facilities of the Treasury of the United States."

Section 2016(a), as amended, provides:

"The face value of the coupon allotment which State agencies shall be authorized to issue to any households certified as eligible to participate in the food stamp program shall be in such amount as the Secretary determines to be the cost of a nutritionally adequate diet, adjusted annually to reflect changes in the prices of food published by the Bureau of Labor Statistics in the Department of Labor."

Under the Food Stamp Program, an eligible low-income household is issued coupons for the purchase of any food (except alcoholic beverages, tobacco and imported foods) at an approved retail store. §§ 2012(b), 2013(a). The household is required to pay a charge for the stamps, the amount depending upon the monthly net income of the household and may not exceed 30% of the household's income. § 2016(b).

On July 29, 1971 the USDA issued new regulations pursuant to the 1971 Amendments to the Act.[4] The Secretary of Agriculture determined that the "Economy Food Plan",[5] one of five standard Department of Agriculture family food plans,[6] "will provide a nutri-

---

1. Pub.L. 88–525, August 31, 1964, 78 Stat. 703.

2. Pub.L. 91–671, January 11, 1971, 84 Stat. 2048.

3. The 1964 Act provided that "eligible households * * * shall be provided with an opportunity more nearly to obtain a nutritionally adequate diet." The words "more nearly" were deleted in the 1971 Amendment.

4. 7 C.F.R. §§ 270–274 (36 Fed.Reg. 14102–14120, amended April 19, 1972, 37 Fed.Reg. 7724).

5. Appellants in their complaint and briefs refer to the plan as the Economy *Diet* Plan or E.D.P. In the affidavits of USDA officials and appellees' briefs, it is usually designated Economy *Food* Plan.

6. The five plans are "economy, low-cost, low-cost for families who are high consumers of cereal products, moderate-cost and liberal". Affidavit of H. Rex Thomas, Acting Administrator of Agricultural Research Service, USDA, App. 93a.

tionally adequate diet to participating households." [7] The Secretary then determined the average cost of the Economy Food Plan in the United States and established food stamp coupon allotments at that level, taking into account variations in family size and regional price variations for Alaska and Hawaii.

While the new regulations increased the coupon allotments, they also increased the purchase requirements, with the result that for some households there was a net loss of benefits, since the higher purchase requirements decreased the difference between the price paid and the purchasing power of the coupons. On January 26, 1972 the USDA revised the purchase requirement schedule so that no participating household would "receive less net program benefits than it would have received under the regulations in effect prior to July 29, 1971." [8]

The instant action was filed after the promulgation of the new regulations on July 29, 1971. With the complaint plaintiffs filed a motion for an "immediate preliminary injunction", contending that when the new regulations became effective in February, 1972 the individual plaintiffs would "lose a substantial amount of their food stamp benefits since the food stamp prices will sharply increase while the allotments remain inadequate and virtually unchanged". The

request for the preliminary injunction was withdrawn after USDA rolled back its price increases on January 26, 1972. 37 Fed.Reg. 1180.

### Issue of Mootness

On April 6, 1972 defendants filed a motion to dismiss, or, in the alternative, for summary judgment.[9] In an order entered July 6, 1972 the court granted "the motion of the defendants for summary judgment" and ordered the action dismissed. In a supporting memorandum, after reciting that plaintiffs had withdrawn their motion for a preliminary injunction, the court concluded:

"In view of this further revision of the food stamp regulations by the Secretary of Agriculture, it appears that the issues raised in plaintiffs' complaint are now moot. Although plaintiffs now apparently argue, in opposition to defendants' motion for summary judgment, that even these recent revisions reinstating the earlier food stamp benefit levels fail to fulfill the purpose of the Food Stamp Act, such an argument was not the gravamen of the complaint. The thrust of their complaint was directed against the regulations promulgated on July 29, 1971. Since those regulations have been changed, there are now no material facts in dispute and defendants' motion for summary judgment should be granted."

7. Affidavit of Richard E. Lyng, Assistant Secretary of Agriculture for Marketing and Consumer Affairs, USDA, App. 104a.

8. Supplemental Affidavit of Richard E. Lyng, App. 117a.

9. With their opposition to plaintiffs' motion for a preliminary injunction, defendants had filed affidavits of Richard E. Lyng, Assistant Secretary for Marketing and Consumer Services, and H. Rex Thomas, Acting Administrator of the Agricultural Research Service. A supplemental affidavit by Lyng was filed with defendants' motion to dismiss. In opposition to the motion to dismiss, plaintiffs filed a statement listing 29 material facts genuinely at issue and affidavits of Dr. Joseph Cimino, Commis-

sioner of the Department of Health of the City of New York; Arthur Schiff, Assistant Commissioner for the Office of Policy Research and Evaluation of the New York City Department of Social Services, and Sophia M. Podgorski, Director of the Division of Nutrition, Pennsylvania Department of Health.

Following the depositions of Assistant Secretary Lyng, Dr. Robert L. Rizek, Director of Consumer and Food Economics Research Division, Agricultural Research, and James H. Kocher, Director of the Food Stamp Division, Food and Nutrition Service, Marketing and Consumer Services Section, USDA, the court, without hearing or oral argument, entered its order of July 6, 1972. Plaintiffs' motion for reconsideration was denied August 14, 1972.

■ The complaint alleges that "the new monthly coupon allotments—established pursuant to the Economy Diet Plan—are violative of the Food Stamp Act since said allotments are considerably lower than the cost of obtaining an adequate nutritional diet." It is clear from an examination of the complaint in its entirety and supporting memoranda that this is the "gravamen" of plaintiffs' complaint.

In addition to challenging the sufficiency of the level of the coupon allotments, plaintiffs alleged that under the new regulations they would be forced to pay "significantly higher prices for their food stamps." While the rollback in the price increases for stamps removed this cause of complaint and rendered this issue moot, it did not alter or render moot the more substantial claim that the allotment levels established by USDA failed to satisfy the requirements of the Act.

### Contentions of Parties

Having concluded that the change in regulations promulgated January 26, 1972 did not render the action moot, we turn to the respective contentions regarding the propriety of summary judgment under the evidence presented to the district court.

Appellants now contend that "there are sufficient undisputed material facts to entitle them to judgment as a matter of law" on the ground that the "Food Stamp coupon allotments established by USDA fail to provide recipients with an opportunity to obtain a nutritionally adequate diet". They recognize, however, that "as to some of the facts, particularly the regional cost differences, * * * there may be disputes", and therefore argue in the alternative that

there should be a remand for further factual inquiry.

In urging summary judgment in their favor, appellees contend that (1) Congress intended that USDA use the Economy Food Plan to implement the 1971 amendments to the Food Stamp Act; (2) Congress committed the determination of what constitutes a nutritional diet to the sole discretion of the Secretary of Agriculture, precluding judicial review; and (3) alternatively, judicial review is limited to the issue of whether the Secretary had a rational basis for his determination.

### Judicial Review

■ Congress has clearly committed to the Secretary of Agriculture the determination of what constitutes a "nutritionally adequate diet" and the cost of that diet. He is then required to set the allotment levels accordingly. While the Act does not expressly provide for judicial review of the Secretary's determination, neither does it in express or implied terms preclude review.

Barlow v. Collins, 397 U.S. 159, 166, 90 S.Ct. 832, 838, 25 · L.Ed.2d 192 (1970), held that judicial review of administrative action "is the rule, and nonreviewability an exception which must be demonstrated." The Court quoted Abbott Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L. Ed.2d 681 (1967): "[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress."

There is no persuasive reason to believe that Congress intended to preclude judicial review of administrative action taken under the Food Stamp Act, either in terms of the statute or in the legislative history cited by appellee.[10] Accord-

10. In an action challenging regulations promulgated by the Secretary with respect to the purchase price of food stamp coupons, this court in Peoples v. United States Department of Agriculture, 138 U.S.App.D.C. 291, 427 F.2d 561 (1970), followed the general rule

that, subject to rare exceptions, the action of an administrative agency in the domestic sphere is reviewable, "for arbitrariness and abuse of discretion, even though discretion may be broad." Supplemental Opinion (Leventhal, C. J.) following rehearing, 427 F.2d at 567. The

ingly, we conclude that judicial review is proper.

■ As to the scope of review, "[I]t is well settled that the fact-finding function is within the exclusive province of the administrative agency. * * * '[T]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.'" (Footnote omitted). Deutsch v. United States Atomic Energy Commission, 130 U.S.App.D.C. 339, 401 F.2d 404, 407 (1968), quoting Rochester Telephone Corp. v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 765, 83 L.Ed. 1147 (1939).

■ Thus, judicial review is limited to the question of whether the Secretary of Agriculture had a rational basis for his determination that basing food stamp coupon allotments on the cost of the Economy Food Plan satisfies his statutory duty to provide "eligible households" with "an opportunity to obtain a nutritionally adequate diet."

### Summary Judgment

■■ Summary judgment of course is proper only where there is no genuine issue as to any material fact. Rule 56(c) F.R.Civ.P. The movant has the burden of clearly demonstrating the absence of any genuine issues as to all the material facts applicable under his theory of the law,[11] and a party opposing summary judgment is entitled to the benefit of all favorable inferences that may be drawn from the evidence.[12] The court may not weigh or resolve issues of fact.[13] In Harl v. Acacia Mutual Life Insurance Company, 115 U.S.App.D.C.

166, 317 F.2d 577, 580 (1963), this court quoted with approval the holding of the Eighth Circuit:

"That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them." [14]

### Appellants' Motion for Summary Judgment

■ As noted *supra*, appellants filed in district court a statement listing 29 "material facts as to which there exist genuine issues that need to be litigated". They now argue "that appellants' witnesses, USDA witnesses, and USDA publications all agree that the Economy Food Plan is not a reasonable measure" for determining the cost of a nutritionally adequate diet and that summary judgment should be entered in their favor, subject to remand for determining issues relating to regional cost differences.

While isolated portions of the testimony of USDA witnesses and USDA publications lend some support to appellants' position, there is also abundant evidence to the contrary in the same sources. The affidavit of Assistant Secretary Lyng expressly states:

"The 'Economy Food Plan' will provide a nutritionally adequate diet to participating households. Food in that plan will provide more than the daily dietary allowances recommended by the Food and Nutrition Board of

court did not, however, determine the nature and scope of review, but concluded that the district court should determine whether the "Secretary exercised his discretion in a manner consistent with the statute and the Constitution." 427 F.2d at 566.

11. Underwater Storage, Inc. v. United States Rubber Co., 125 U.S.App.D.C. 297, 371 F.2d 950, 953 (1966), cert. denied, 386 U.S. 911, 87 S.Ct. 859, 17 L.Ed.2d 784 (1967).

12. Semaan v. Mumford, 118 U.S.App.D.C. 282, 335 F.2d 704 (1964), on remand, 263 F.Supp. 516.

13. Empire Electronics Co. v. United States, 311 F.2d 175, 179 (2 Cir. 1962); 3 Barron and Holtzoff, Federal Practice and Procedure § 1225 (Wright Ed. 1958), 6 Moore's Federal Practice, para. 56.15 (3) (1965).

14. Sprague v. Vogt, 150 F.2d 795, 801 (8 Cir. 1945).

the National Academy of Sciences-National Research Council for all of the nutrients for which recommended allowances have been established and for which adequate information on the content of such nutrients in foods is available. Contrary to plaintiffs' contentions, families will receive wholesome nourishment even if the diets suggested for use under the Economy Food Plan are followed for periods of indefinite duration." App. 104a.

The affidavit of H. Rex Thomas, Acting Administrator of the Department's Agricultural Research Service, likewise states that, "The Economy Food Plan, if followed, is sufficient to provide a nutritionally adequate diet." [15] App. 94a.

From an examination of the record in its entirety and giving appellees the "benefit of all favorable inferences that may be drawn from the evidence", it is clear appellants are not entitled to summary judgment.[16]

### Appellees' Motion for Summary Judgment

A more difficult question is presented by appellees' motion, particularly in view of the limited scope of judicial review.

It is true, as appellees contend, that the legislative history of the 1971 Amendment makes it clear that when Congress committed to the Secretary of Agriculture the determination of "the cost of a nutritionally adequate diet", Congress was aware that the Secretary planned to use the Economy Food Plan. The Conference Report reads in part:

"2. Value of Coupon Allotment

"The House bill established the value of the coupon allotment to food stamp recipients at a level which the Secretary finds will provide a 'nutritionally adequate diet.' The Department informed the Committee that this is currently $106 per month for a family of four. The Senate amendment proposed to establish a 'low cost food plan' standard which the Department stated would require $134 per month for a family of four.

"The conference substitute retains the House standard, but adopts the language of the Senate amendment requiring the Secretary of Agriculture to make an annual adjustment to reflect increases for food in the 'Cost of Living' index published by the Department of Labor. H.R.Rep.No. 1793, 91st Cong., 2d Sess. 9 (1970)." [17]

A letter from Assistant Secretary Lyng to Senator Dole, which was placed in the Congressional Record when the Conference Report was under debate, reads:

"Dear Senator Dole: You have inquired whether the Economy Food Plan would provide families with an adequate diet.

"The Economy Food Plan, which is the least expensive of the food plans published by USDA, does provide families with nutritionally adequate

---

15. Appellants rely upon isolated excerpts from the testimony of Dr. Robert L. Rizek, Director of Consumer and Food Economic Research for the Department. While Dr. Rizek did not think there was an answer to counsel's question, "What is a reasonable measure of basic money needs for a good diet", he did testify that it was his understanding that a person may follow the economy food plan and have a nutritionally adequate diet as long as he lives (App. 196a), and that "The economy food plan provides a nutritionally adequate diet based on the RDA." (Recommended Dietary Allowance of the National Academy of Sciences). App. 198a.

16. No useful purpose would be served by a detailed discussion of the evidence. There was a dispute with respect to all of the grounds now urged by appellants to support their claim to summary judgment.

17. The Senate had adopted an amendment offered by Senator McGovern providing that the amount determined by the Secretary should in no event be less than the "low-cost food plan." In supporting this amendment and later in opposing the Conference Report, Senator McGovern advanced many of the arguments here urged by appellants with respect to the Economy Food Plan.

diets. In fact, adequate plans can be developed at still lower cost.

"It is obvious, of course, that the more expensive food plans published by the Department offer families a broader range of choice and allow them to utilize foods with lower nutritional value per dollar."

We recognize that Congress did not "adopt" the Economy Food Plan as a statutory standard of nutritional adequacy. Since Congress was clearly aware, however, that the Secretary of Agriculture intended to use this plan, it would be difficult to find, as appellants contend, that the Secretary "applied arbitrary, unreasonable and illegal standards, and abused [his] discretion in determining the level of coupon Food Stamp allotments which will provide recipients with an opportunity to purchase a nutritionally adequate diet".

We conclude, however, that this determination should be made initially by the district court. It is clear from the memorandum opinion that the district court granted summary judgment on the ground that the issues were moot by reason of the change in regulations. There was no determination whether, giving the appellants "the benefit of all favorable inferences that may be drawn from the evidence", there was (1) no abuse of discretion by the Secretary, and (2) a rational basis for the Secretary's determination with respect to (a) the use of the Economy Food Plan in determining the level of coupon food allotments, and (b) in failing to provide differences in coupon allotments to reflect regional differences in food costs.[18]

Reversed and remanded for further proceedings consistent with this opinion.

---

18. As this court recognized in National Life Insurance Company v. Silverman, 147 U.S.App.D.C. 56, 454 F.2d 899, 908 (1971), "the court is required to determine whether there are material facts as to which there is no genuine issue." In that case the court could not "be sure that the evidentiary material in support of the motion was considered", but determined that it was clear from the record that there were material facts as to which there was no genuine issue. It seems clear that in this case the court's finding that there are "now no material facts in dispute" related solely to the issue of mootness. The evidentiary material submitted by all parties on the motions for summary judgment should be considered by the district court in determining whether there are any genuine issues as to material facts. *See Generally*, 6 Moore Chap. 56.

We do not intend by this opinion to suggest to the district court that a summary judgment should or should not be entered for the appellees. That is a matter for the court to determine after hearing and a full examination of the evidence on both issues before the court. On the basis of the evidence now before this court it would appear that at least with respect to regional variations in food prices there may be genuine issues as to material facts.