Miriam **RODWAY** et al., Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE et al., Defendants.**

**Civ. A. No. 2553–71.**

United States District Court,
District of Columbia.

Dec. 12, 1973.

Michael B. Trister, Washington, D.C., for plaintiffs.

Robert M. Werdig, Jr., Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

JOHN H. PRATT, District Judge.

### Preliminary Statement

This action arises on cross-motions for summary judgment and raises issues concerning the administration of the Food Stamp Program (hereinafter referred to as "the program"), authorized by the Food Stamp Act of 1964, as amended, 7 U.S.C. §§ 2011–2026 (hereinafter referred to as "the Act"). The program is administered by the United States Department of Agriculture (hereinafter referred to as "the Department").

The purpose of the program is to provide low-income households the opportunity to obtain nutritionally adequate diets. This is accomplished by issuing to eligible households coupon allotments which have a monetary value greater than the charge, if any, which such households must pay for their allotments. Under the program, all eligible households of a given size receive a coupon allotment having the same monetary value.

The United States Court of Appeals for the District of Columbia Circuit, in a decision dated July 10, 1973, reversed the order of this Court granting defendants' motion for summary judgment on

the basis of mootness. The case was remanded to this Court for further proceedings. Rodway v. United States Department of Agriculture, 157 U.S.App. D.C., 133, 482 F.2d 722.

Plaintiffs' position in this litigation is founded upon two primary bases. First, plaintiffs allege the Economy Food Plan upon which the coupon allotments under the program are based does not constitute a nutritionally adequate diet. Second, plaintiffs allege the coupon allotments established by the Department are not adequate to permit participants in the program to purchase the quantities and types of food recommended in the Economy Food Plan. As an adjunct to their second position, plaintiffs assert the cost of foods recommended in the Economy Plan is higher in the Northeast than in other regions of the United States.

### Annual Adjustment of Coupon Allotments

 With respect to plaintiffs' second basis for seeking relief, i.e., allotments levels are below the cost of the Economy Plan, the parties agree the issue is appropriate for resolution by summary judgment.

Plaintiffs have submitted evidence, based upon statistics issued by the Department, purporting to show coupon allotments presently in effect are inadequate to purchase food constituting the Economy Food Plan at the prices as of August, 1973. While this may well be the case, it is not a relevant criterion for determining whether defendants' actions, challenged herein, are in compliance with the provisions of the Act. The Act does not require that the value of the coupon allotment be, at all times, sufficient to purchase the Economy Food Plan. Until its recent amendment[1] section 7(a) of the Act[2] read as follows:

"The face value of the coupon allotment which State agencies shall be au-

thorized to issue to any households certified as eligible to participate in the food stamp program shall be in such amount as the Secretary determines to be the cost of a nutritionally adequate diet, *adjusted annually to reflect changes in the prices of food published by the Bureau of Labor Statistics in the Department of Labor.*" (Emphasis added)

Thus, the Act, as originally enacted, contemplated annual adjustment of coupon allotments. Pursuant to this authority, the Department established a coupon allotment for a hypothetical family of four at $108, effective July 1, 1971. The $108 allotment was based upon the price of food as of December, 1970. Each year since, the Department has adjusted the allotment annually, effective as of July 1 each year, on the basis of the price of food as of the preceding December.

It necessarily follows that coupon allotments in effect during a year did not precisely reflect changes in the cost of food occurring during the year. In this regard, the 1973 amendments (footnote 1, *supra*) amended section 7(a) of the Act to provide for *semiannual* adjustments of coupon allotments. Section 3(m) of the 1973 Act, amended section 7(a) of the Act as follows:

"The face value of the coupon allotment which State agencies shall be authorized to issue to any households certified as eligible to participate in the food stamp program shall be in such amount as the Secretary determines to be the cost of a nutritionally adequate diet, *adjusted semiannually by the nearest dollar increment that is a multiple of two to reflect changes in the prices of food published by the Bureau of Labor Statistics in the Department of Labor to be implemented commencing with the allotments of January 1, 1974, incorporating the changes in the prices of food through August 31, 1973, but in no event shall*

---

1. Agriculture and Consumer Protection Act of 1973, 87 Stat. 221.

2. 7 U.S.C. § 2016(a), as amended by Act of January 11, 1971, 84 Stat. 2048.

such adjustments be made for households of a given size unless the increase in face value of the coupon allotment for such households, as calculated above, is a minimum of $2.00." [3] (Emphasis added) 87 Stat. 248.

On November 1, 1973, the Department published in the Federal Register new tables [4] governing coupon issuance which reflect the provisions of the newly amended section 7(a). 38 Fed.Reg. 30118.

The legislative history of the 1971 amendments to the Act [5] discloses Congress was fully aware the Secretary of Agriculture planned to establish coupon allotments at approximately $106 per month for the hypothetical household of four members.

From the language in section 7(a) of the Act before the 1973 amendment, it is apparent Congress intended the Secretary would initially establish, pursuant to the 1971 amendments, a face value for the coupon allotment and that such value would be adjusted annually. Had Congress intended the coupon allotment reflect the cost of a nutritionally adequate diet at all times, Congress would not have included language providing for an annual adjustment of the allotment.

In view of these circumstances, it is clear the Secretary has fully complied with the statutory provisions with respect to the establishment of the coupon allotment and its annual, and recent semiannual, adjustment.

### Purchasing Power of Allotments

▮ With respect to plaintiffs' first claim, i.e., the Economy Food Plan does not constitute a nutritionally adequate diet, only defendants have moved for summary judgment.

It has been established that the Department's Economy Food Plan is the standard for coupon allotments under the program. The "economy" plan is one of several food plans developed by the Department and is the least expensive. At the time legislation which ultimately became the 1971 amendments to the Act was under consideration, the Secretary of Agriculture made it very clear he intended to employ the Economy Plan as the basis for allotments to be established under the Act. Indeed, the legislative history of the 1971 amendments discloses one of the main points in dispute among the members of Congress was which of the Department's plans would be used for this purpose. Proponents of a more generous allotment favored the "Low Cost" Food Plan, somewhat more expensive than the Economy Plan. Low Cost proponents proposed legislation which would have established that plan as the basis for allotments. They raised many of the same objections to the Economy Plan which have been raised in this litigation. The statement of the House managers contained in the report of the conferees indicates:

"2. Value of Coupon Allotment

The House bill established the value of the coupon allotment to food stamp recipients at a level which the Secretary finds will provide a 'nutritionally adequate diet.' The Department informed the Committee that this is currently $106 per month for a family of four. The Senate amendment proposed to establish a 'low cost food plan' standard which the Department stated would require $134 per month for a family of four. The conference substitute retains the House standard, but adopts the language of the Senate amendment requiring the Secretary of Agriculture

---

3. The text quoted above includes a technical amendment made by Public Law 93–125, approved October 18, 1973.

4. The new tables are based upon the price of food as of August, 1973, and substantially

increase the coupon allotments for households. As required by the recent amendments to the statute, such changes will be effective as of January 1, 1974.

5. See Footnote 2, *supra*.

to make an annual adjustment to reflect increases for food in the Cost of Living Index published by the Department of Labor." H.R.Rep.No. 1793, 91st Cong., 2d Sess. 9 (1970)

Senator Ellender, Chairman of the Committee on Agriculture and Forestry, presented an analysis of the Conference Report to the Senate which stated:

"The Conference substitute—

\* \* \* \* \* \*

"(B) provides for a coupon allotment to provide a nutritionally adequate diet (currently about $106 per month for a family of four), adjusted to reflect changes in food costs, rather than to provide 'lowcost diet' (currently about $134)." 116 Cong.Rec. 44431 (1970)

Congress resolved the issue by adopting the conference substitute, being fully aware of the Secretary's intent to use the Economy Plan.

With the advantage of this statutory background, the Court finds that the Secretary did not abuse the discretion accorded him under the Act and his action in establishing the Economy Food Plan, as the standard for allotments under the Act, is reasonable and consistent with the representations which the Secretary made to Congress of the intent of the Secretary to use the Economy Plan. Congress was fully aware of the Secretary's proposed action at the time it rejected the Low Cost Plan proposed in the Senate version of the bill.

▮▮▮ It may be, as plaintiffs allege, every household, because of its particular composition, will not receive under the program a diet which is exactly equivalent in nutritional adequacy to the diet which some other household of similar size would receive. Such disparities, as plaintiffs allege, may result from the age, sex, health and physical activity of the household members. However, in the area of economics and social welfare,

a classification does not fail on equal protection grounds because it is imperfect. It does not offend the Constitution simply because "the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' . . . The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970).

### Higher Regional Allotments Are Not Required

▮▮▮ The principle quoted above is likewise applicable to the contention of plaintiffs that a higher food stamp allotment should be provided to eligible households living in the Northeast area of the United States. Plaintiffs assert food costs are higher in the Northeast than in other parts of the United States. Affidavits and other evidence before the Court indicate there may be a somewhat higher cost of food in the Northeast than in other areas. The magnitude of the difference between the parties depends upon whether cost estimates are based upon the food *preferences* of people who live in the Northeast *or* simply upon *prices for identical food items* wherever they may be purchased in the United States. Preferences aside,[6] the cost of the Economy Plan in the Northeast is not substantially higher than the cost of the plan in the rest of the contiguous United States. The difference, on the average, is between three and four percent. There is also evidence that food prices differ within the Northeast area. Further, differences in food prices among some of the larger cities in the Northeast are greater than the difference between food prices in the Northeast and in the nation generally.

In view of the relatively small difference in price of the same food items in

---

6. Defendants have established, and their determination is reasonable, that a "common market basket" approach, with regional substitutions, meets the statutory provision that low income households be given an "*opportunity to obtain a nutritionally adequate diet.*"

different regions of the United States, the Court finds the Secretary's establishment of uniform allotments for all of the 48 contiguous States is not an abuse of discretion. Even if it were assumed, *arguendo*, that identical households living in different areas might receive a slightly different benefit from the Food Stamp Program because of differences in cost of food in their respective areas, the differences are not great enough to take the matter out of the range of reasonable alternatives available to the Secretary under the principles discussed above.

For the foregoing reasons the Court orders that defendants' motion for summary judgment be and the same hereby is granted, and that plaintiffs' motion for partial summary judgment be and the same hereby is denied.