**Linda Gail PATRICK**

v.

**TENNESSEE DEPARTMENT OF PUB-
LIC WELFARE et al.**

**Civ. No. 3–74–248.**

United States District Court,
E. D. Tennessee, N. D.

Dec. 27, 1974.

David M. Kirstein, Jerrold L. Becker, Knoxville, Tenn., for plaintiffs.

John L. Bowers, Jr., U. S. Atty., Charles N. Stedman, Asst. U. S. Atty., Knoxville, Tenn., Bart Durham, Asst. Atty. Gen., Nashville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Before the Court are the cross-motions for summary judgment. The Court heard oral argument on the motions, at which time the parties agreed that all issues could be decided by the Court in one opinion. At the hearing the Court received the testimony of Mr. Waldron, who works under the supervision of the Director of the Food Stamp Division of the Food Nutrition Service of the Department of Agriculture and the testimony of Mr. Cheetwood from the Department of Housing and Urban Development.

Plaintiffs, Linda Gail Patrick and Louise Compton, seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 enjoining defendants from including Department of Housing and Urban Development (H.U.D.) rent subsidy payments in the calculation of plaintiffs' net income for food stamp purposes. 7 U.S.C. § 2011 et seq.

The Court's jurisdiction is invoked by plaintiffs under 28 U.S.C. §§ 1337, 1343(3), 1346, 1361 and 5 U.S.C. § 701.[1]

A brief recital of the background of this case will aid in the clarification of the legal issues.

Pursuant to the statutory directive of the Food Stamp Act, the amount a household must pay for a fixed monetary amount of food·stamps is dependent on two factors: (1) the household's net income after allowance for certain living and business expenses and (2) the number of individuals in the household.[2] Thus, under this gradient format the greater the household income, the more the household must pay for a fixed amount of food stamps.

Mrs. Patrick, a resident of Knoxville, first received food stamps in April 1972 on the basis of a two person household. At that time and prior to January 1974 the Tennessee Department of Public Welfare, the state agency charged with the responsibility of administering the food stamp program at the state level, did not include the H.U.D. rent supplement payments in the calculation of a household's gross income.[3] Accordingly, prior to the change in policy, Mrs. Patrick's gross income was approximately $99.00 a month from Aid to Families with Dependent Children, which after allowing the appropriate deductions entitled her to pay $7.00 for $78.00 of food stamps. However, following the change of policy[4] the $101.00 rent subsidy payment from H.U.D. was treated as income, and, accordingly, Mrs. Patrick paid $15.00 per month for the same

1. Although not depriving the Court of jurisdiction, in the Sixth Circuit the Administrative Procedure Act, including section 10(a), does not provide an independent basis of jurisdiction. Sierra Club v. Hickel, 467 F.2d 1048 (6th Cir. 1972), cert. den. 411 U.S. 920, 93 S.Ct. 1545, 36 L.Ed.2d 313.

2. 7 U.S.C. §§ 2013, 2014, 2016. See generally 13 A.L.R. Fed. 369.

3. Under The Department of Housing and Urban Development Rent Subsidy Program (236 Program), H.U.D. subsidizes a qualified tenant's rent by remitting a calculated portion of the rent directly to the project owner. Thus, the project owner receives the subsidy on behalf of the tenant. 12 U.S.C. § 1701s (Sup.1974). Pertinent to the examination here, Mrs. Patrick's rent subsi-

dy is $101.00, while Mrs. Compton's rent subsidy is $127.00 a month.

4. This change in policy was set forth in the Tennessee Department of Public Welfare Bulletin No. 151, September 19, 1973. This policy was evidently in conformity with the announced directive from the Department of Agriculture, Food and Nutrition Service to the Tennessee Department of Public Welfare. See letter of August 1, 1973 from R. Hicks Elmore, Director, Food Stamp Program, Food and Nutrition Service, Southeast Region, Atlanta, Georgia to Mrs. Greta Hinds, Director, Food Stamp Program, Nashville, Tennessee, where it is stated:

As indicated in FNS (FS) Instruction 732–1, Section III(I)(1)(j), payments made on behalf of the household by a per-

amount of food stamps. Mrs. Patrick secured employment in March 1974 and due to her increased income paid $58.00 for the food stamps; however, the Department of Welfare continued to include the rent subsidy payment. By including the rent supplement in calculating her gross income and forcing her to pay more for the same amount of food stamps, plaintiff argues that her disposable income is effectively reduced, an outcome in disharmony with the Congressional policy of the Food Stamp Act.[5]

Mrs. Louise Compton, also a resident of Knoxville, receives $146.00 a month disability and social security insurance in addition to $44.00 a month from her son who lives with her. She lives in the same apartment complex as Mrs. Patrick and pays $55.00 a month for rent which is supplemented by a H.U.D. payment in the amount of $127.00 a month remitted by the Department directly to the project owner. Before the change in policy Mrs. Compton paid $29.00 for a fixed value of food stamps. Following the inclusion of the rental supplement, she was informed that she no longer qualified for participation in the program as her monthly income was in excess of the stamp program's schedule of needs. Thus, in her case the change in policy resulted in denial of the benefits of the food stamp program.

## Food Stamp Act

The Food Stamp Act of 1964, as amended,[6] in delegating the day to day administration of the Act's program to the Administrator and state agencies, states:

"(a) The Secretary is authorized to formulate and administer a food stamp program under which . . .

eligible households within the State shall be provided with an opportunity to obtain a nutritionally adequate diet through the issuance to them of a coupon allotment which shall have a greater monetary value than the charge to be paid for such allotment by eligible households.

.    .    .    .    .    .

"(c) The Secretary shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program. . . ." 7 U.S.C. § 2013 (a), (c).

Under the Act, an eligible household pays for stamps at a reduced rate of the coupon's face value, this fractional rate of the face value being dependent upon the household size and net monthly income. The household may in turn use the coupons to purchase food items at participating stores. 7 U.S.C. §§ 2012(b), 2013(a). In promulgating regulations pursuant to the delegation contained in 7 U.S.C. § 2013 the Secretary at 7 C.F.R. § 271.3(c)(1)[7] set forth those items that are to be included in calculating a household's net income.

The pertinent parts of this provision are set forth:

(1) *Definition of income.* To compute maximum monthly income for purposes of determining eligibility:

(i) Income shall mean any of the following, but not be limited to:

*    *    *    *    *    *

(g) payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;

---

son other than a household member should be counted as income. In the cases mentioned above, payment of housing expenses either whole or part was made on behalf of the household by a source outside the household with no repayment expected. As such, these are vendor payments and must be counted as income.

5. 7 U.S.C. § 2011.

6. Pub.L. 91–671, January 11, 1971, 84 Stat. 2048.

7. 36 Fed.Reg. 14104, July 29, 1971, as amended at 36 Fed.Reg. 14463, August 6, 1971.

(*h*) Payments received from Government sponsored programs such as Agricultural Stabilization and Conservation Service programs, the Work Incentive Program, or Manpower Training Program;

(*i*) Payments, except those for medical costs, made on behalf of the household by a person other than a member of the household;

\* \* \* \* \* \*

(*m*) Rents, dividends, interest, royalties, and all other payments from any source whatever which may be construed to be gain or benefit.

Section 271.3(c)(1)(ii) excludes certain items from income:

(ii) The following shall not be considered income to the household:

\* \* \* \* \* \*

(*c*) Any gain or benefit which is not in money (e. g., the free use of a house).

Finally, Section 271.3(c)(1)(iii) allows certain deductions to be made for various expenses:

(iii) Deductions for the following household expenses shall be made:

\* \* \* \* \* \*

(*g*) Shelter costs in excess of 30 percentum of the household's income after the above deductions.

Plaintiffs contend that the policy of the Tennessee Department of Public Welfare of including rent supplement payments in the household income is defective because (1) the policy is in conflict with Agriculture's own regulations, specifically, 7 C.F.R. § 271.3(e)(1)(ii) (*c*)—"gain or benefit which is not in money (e. g. free use of a house)" shall be excluded from income, (2) the policy creates a conclusive presumption that a tenant participating in the rent supplement program is not needy and an arbitrary classification unrelated to the Act's statutory scheme, and (3) the poli-

cy unjustifiably distinguishes rent subsidy tenants in HUD 221(d)(3) and 236 housing programs from tenants in public housing under the United States Housing Act of 1937, 42 U.S.C. § 1401 et seq.

The State of Tennessee has made no appearance before the Court except to state that it has only followed Agriculture's directives and that it will abide by any disposition of the lawsuit.

*Judicial Review*

Defendant Department of Agriculture has made a motion to dismiss this action or in the alternative for summary judgment principally on the ground that the "determination of what is and what is not income for the purposes of the Food Stamp Act is committed to agency discretion by law within the meaning of the Administrative Procedure Act, Section 701(a)(2), and is therefore not subject to judicial review." [8] In placing the determination of what items are to be included and excluded from income beyond the scope of judicial review, defendant contends that the agency action in this case meets the admittedly rigorous test for invoking the exception recently set forth in Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). However, the Court cannot conclude that in this instance the Food Stamp Act was "drawn in such broad terms that in a given case there is no law to apply." 401 U.S. at 410, 91 S.Ct. at 821, quoting S.Rep.No.752, 79th Cong., 1st Sess., 26 (1945). A general delegation of authority to promulgate regulations and enforcement procedures in the furtherance of an act's administration such as that contained at 7 U.S. C. § 2013(c) cannot be construed automatically to be tantamount to placing the agency's action outside the scope of judicial review. Factually analogous to the instant case is Rodway v. United

---

8. 5 U.S.C. § 701(a)(2) provides in part:

(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) *statutes preclude judicial review;* or
(2) *agency action is committed to agency discretion by law.*

States Department of Agriculture, 157 U.S.App.D.C. 133, 482 F.2d 722 (1973), where plaintiffs sought review of USDA's establishment of allotment levels for food stamps contending that the agency allotment failed to satisfy the statutory directive that the allotment insure a nutritionally adequate diet. 7 U.S.C. § 2016(a). In the face of the contention by USDA that Congress committed the determination of what constitutes a nutritional diet to the sole discretion of the Secretary of Agriculture, precluding judicial review, the Court, citing Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 838, 25 L.Ed.2d 192 (1970) for the proposition that judicial review of administrative action "is the rule," stated:

> There is no persuasive reason to believe that Congress intended to preclude judicial review of administrative action taken under the Food Stamp Act, either in terms of the statute or in the legislative history cited by appellee. Accordingly, we conclude that judicial review is proper.[9] 482 F.2d at 726

Similarly, the Court is not persuaded to place defendant's action beyond judicial review at this stage. Abbot Laboratories v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

### Administrative Regulation

█ Plaintiffs contend that Agriculture's policy of including rent subsidy payments as income is contrary to the Department's own regulations, in particular, 7 C.F.R. § 271.3(c)(1)(ii)(c):

> (ii) The following shall not be considered income to the household:
>
> \*  \*  \*  \*  \*  \*
>
> (c) Any gain or benefit which is not in money (e. g., the free use of a house).

In opposition to plaintiffs' contention that the rental supplement falls clearly within this regulatory provision is 7 C.F.R. § 271.3(c)(1)(i)(g), (i):

> (i) Income shall mean any of the following, but not be limited to:
>
> \*  \*  \*  \*  \*  \*
>
> (g) Payments received from federally aided public assistance programs, general assistance programs, or other assistance programs based on need;
>
> \*  \*  \*  \*  \*  \*
>
> (i) Payments, except those for medical costs, made on behalf of the household by a person other than a member of the household.
>
> \*  \*  \*  \*  \*  \*

The relationship and distinction between subsections 271.3(c)(1)(i)(g) and (i) (requires inclusion) and subsection 271.3(c)(1)(ii)(c) (allows exclusion) is illuminated somewhat when reference is made to that portion of the "Food Stamp Certification Handbook," FNS Instruction 732–1, section 2262.10 entitled Vendor payments:

> "2262.10 Vendor payments.
>
> "Payments in money, except those for medical costs, made on behalf of the household by a person other than a member of the household. Such payments may be made by private or government sources, for instance, housing allowances from Housing and Urban Development (HUD) would be an example of a government vendor payment. To qualify as a vendor payment, there must be an identifiable payment on the household's behalf, the major benefit from which accrues to the household rather than the payer. If there is no identifiable payment or if the major benefit from such payment accrues to the payer and not the household, such benefit shall be considered income in kind and not income to the household."

When the above regulations and instructions are read together, it is apparent that Agriculture made the policy deter-

---

9. *Compare* Peoples v. United States Department of Agriculture, 138 U.S. App.D.C. 291, 427 F.2d 561 (1970), *with* West v. United States Department of Agriculture, 305 F. Supp. 1312 (D.C.Miss.1969) (semble).

mination that in certain instances a benefit accruing to an individual would not be recognized as income where a relatively accurate and ascertainable monetary value could not be imputed to the benefit; in such cases the benefit would be considered an in kind benefit and would be excluded from an applicant's or recipient's income.

### Housing Programs

As noted above, under the H.U.D. 221(d)(3) housing program, the "Secretary of Housing and Urban Development . . . is authorized to make, and contract to make, annual payments to a 'housing owner' on behalf of 'qualified tenants', as those terms are defined herein, in such amounts and under such circumstances as are prescribed in or pursuant to this section." 12 U.S.C. § 1701s(a). Subsection c of that section provides that a " 'qualified tenant' means any individual or family who has . . . been determined—(1) to have an income below the maximum amount which can be established in the area . . . for occupancy in public housing dwellings; . . . " 12 U.S.C. 1701s(c). In the case of the rent supplement program the housing owner, in most instances a private entity, receives from H.U.D. on a periodic basis a fixed percentage of the tenant's rent. The tenant himself does not receive the supplement and to that extent does not exercise any dominion or control over the supplement.

That class which plaintiff claims is the object of preferential treatment are those individuals who reside in traditional low-rent housing projects under the United States Housing Act of 1937, 42 U.S.C. § 1401 et seq. Under this program, the federal government provides financial assistance to state and local municipalities in the form of loans or grants for the development of low-rent housing by the state agency. 42 U.S.C. § 1409. Additionally, an annual assistance payment in the form of a lump sum payment to the local housing authority enables the maintenance of low rents in the projects. Mr. Cheetwood from H.U.D. testified that it was the program's objective to only charge the tenants of a low-rent project that amount necessary to cover the apartment's day-to-day overhead costs. More recently, however, even this overhead has been subsidized by federal assistance.

From this brief description of the 221(d)(3) rent supplement and traditional low-income public housing programs, it is evident that both programs have certain common traits. More specifically, (1) under both housing programs the income qualification standards are essentially the same, that is to say, the maximum allowable incomes for qualification are the same, (2) under both programs the project owner, in one case a private entity and in the other a public entity, receives financial aid from the federal government in the form of periodic subsidies and, lastly, (3) under both programs the immediate beneficiary of the subsidy is the qualified low-income tenant.

The underlying distinction between the programs, which ultimately gives rise to the alleged classification, is the form and method of the federal subsidy. Thus, while the common denominator of both programs is the presence of a direct federal subsidy remitted by H.U.D. to the project owner on behalf of a tenant or group of tenants, because the method and form of the subsidy differs between the two, the monetary value of the benefit accruing to the respective tenants of each program is different. Under the 221(d)(3) rent supplement program the monetary equivalent of the benefit the tenant receives is readily ascertainable and can be realistically determined since a fixed sum is remitted by the Government on behalf of the tenant. In that case, the subsidy realistically reflects the benefit the tenant receives. Affixing a monetary value to the benefit the tenant in the traditionally low-rent project receives, however, is a considerably more illusive if not impossible task since in his case there is no available yardstick for measuring the benefit received by the tenant with a

relatively high degree of accuracy. This difficulty of accurately assessing the tenant's benefit in the case of the traditional low-rent tenant arises from the fact that in his case the Government remits to the public housing authority a lump sum payment which, while ultimately accruing to the benefit of each individual tenant, includes compensation to the authority for costs that are not common to or borne by the project owner under the 221(d)(1) rent supplement program, e. g., administrative costs. Thus, simply dividing the amount of an annual subsidy by the number of apartment units would not necessarily give a realistic monetary value for benefit received by a given occupant. Likewise, because of the nature of the market place, affixing a comparative market value to each low-rent unit would be equally speculative.

In conclusion, the Court is satisfied that on the basis of Mr. Waldron's testimony an accurate and realistic value cannot be placed on the benefit received by tenants living in low-rent projects. In the absence of competent testimony to the contrary, the Court has no basis to conclude that such a valuation is in fact possible.

### Equal Protection

The Court is of the considered opinion that neither the regulation or instructions under examination here nor their application by the Department of Agriculture or Tennessee Department of Welfare in this particular instance are repugnant to the Fifth or Fourteenth Amendments. The distinction drawn between 7 C.F.R. § 271.3(c)(1)(i)(g) and (i) and 7 C.F.R. § 271.3(1)(ii)(c) is one evolving from the practical necessities of administering a complex and inclusive assistance program and not from a constitutionally improper motive. We are told by the Department of Agriculture that its policy of considering cash payments as income and payments in kind not as income is designed to insure uniformity in the distribution of the stamps to those in need and to prevent inequities which would result if each state appraised and assigned subjective dollar values in services not provided as cash payments. The national standards were devised to assure that an applicant for food stamps is evaluated according to such standards and not by separate standards prescribed by the state wherein he applies. We believe that this policy is reasonable and that the regulations promulgated in carrying out said policy are rationally related to a legitimate governmental interest—the fair and realistically accurate calculation of a person's income for food stamp purposes. To require the Department of Agriculture to affix a monetary value in all instances to all benefits received would necessarily reduce such income calculations to mere speculation. To compel such an outcome would be to require the Food Stamp Office to include the neighbor's cup of sugar. It is well established that the Equal Protection Clause does not require such mathematical precision. Indeed, the guidelines set forth in Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 compel the Court to address itself to the practicalities of administering a complex federal assistance program:

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 [31 S. Ct. 337, 340, 55 L.Ed. 369]. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]. 'A statutory discrimination will not be set aside if any state of facts reasonably may be

conceived to justify it.' McGowan v. Maryland, 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393].

"To be sure, the cases cited, and many others enunciating this fundamental standard under the Equal Protection Clause, have in the main involved state regulation of business or industry. The administration of public welfare assistance, by contrast, involves the most basic economic needs of impoverished human beings. We recognize the dramatically real factual difference between the cited cases and this one, but we can find no basis for applying a different constitutional standard. See Snell v. Wyman, D.C., 281 F.Supp. 853, aff'd, 393 U.S. 323 [89 S.Ct. 553, 21 L.Ed.2d 511]. It is a standard that has consistently been applied to state legislation restricting the availability of employment opportunities. Goesaert v. Cleary, 335 U.S. 464 [69 S.Ct. 198, 93 L.Ed. 163]; Kotch v. Board of River Port Pilot Comm'rs, 330 U.S. 552 [67 S.Ct. 910, 91 L.Ed. 1093]. See also Flemming v. Nestor, 363 U.S. 603 [80 S.Ct. 1367, 4 L.Ed.2d 1435]." 397 U.S. 471, at 485, 90 S.Ct. at 1161.

The Court finds the Moreno v. U. S. Dept. of Agriculture, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 case significantly dissimilar from the case under present examination for there the challenged classification failed to further some legitimate governmental interest other than those set forth in the Act's declaration. 413 U.S. at 534, 93 S.Ct. 2821. Here, plaintiffs neither alleged nor is the Court aware that defendant's distinction between rent supplement and low-income tenants resulted from any improper or discriminatory intent.

10. Plaintiffs' argument that Agriculture's regulations and instruction under examination here create a constitutionally impermissible presumption is without merit. The regulations do nothing to abridge an applicant or recipient's right to have his case examined on an individual basis according to his personal needs. The regulations and instructions contain no irrebuttable presumption. Irizarry v. Weinberger, 381 F.Supp. 1146, 1155 (S.D.N.Y.1974). Likewise, the

Moreover, it is the opinion of the Court that in light of the difficulty if not impossibility of calculating the monetary value of the benefit received by a tenant in low-rent housing, any classification created thereby can be upheld as rationally related to a legitimate government interest.[10] See also Jefferson v. Hackney, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); Rodway v. United States Department of Agriculture, 369 F.Supp. 1095, 1098–99 (D.D.C.) on remand 157 U.S.App.D.C. 133, 482 F.2d 722 (1973); Irizarry v. Weinberger, 381 F.Supp. 1146, 1153 (S.D.N.Y.1974).

Having reviewed the record and the law in this cause, the Court is of the opinion that the evidence is insufficient to establish plaintiffs' claims. Accordingly, it is ordered that plaintiffs' action be, and the same hereby is, dismissed.

Court dismisses plaintiffs' contention that Agriculture misapplied its own regulations in failing to conclude that rent supplements did not fall within 7 C.F.R. § 371.3(c)(1)(ii)(c). The Court attributes controlling weight to Agriculture's interpretation of its own regulation under the facts and circumstances of this case. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).